1  Cyrus M. Sanai, SB#150387
   SANAIS
2  9440 Santa Monica Boulevard
   Suite 301
3  Beverly Hills, California, 90210
   Telephone: (310) 717-9840
4  cyrus@sanaislaw.com

5

6

7

8        UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
9                              CALIFORNIA

10  CYRUS SANAI, an individual            )  Case No.:
                                          )
11                  Plaintiff,            )
            vs.                           )
12                                        )  **COMPLAINT  FOR:**
    LEONDRA KRUGER, an individual,        )
13  sued in her individual and official   )   (1) RELIEF UNDER 42 U.S.C. §1983;
    capacities; JOSHUA P. GROBAN, an      )   (2) RELIEF UNDER EX PARTE YOUNG
14  individual sued in his individual and )   (3) DECLARATORY JUDGMENT.
    official capacities; MARTIN J.        )
15  JENKINS, an individual sued in his    )
    individual and official capacities; KELLI )  JURY DEMAND
16  M. EVANS, an individual sued in her   )
    individual and official capacities;   )
17  CAROL A. CORRIGAN, an individual      )
    sued in her individual and official   )
18  capacities; GOODWIN H. LIU, an        )
    individual sued in his individual and )
19  official capacities,  PATRICIA        )
    GUERRERO, an individual sued in her   )
20  individual and official capacities and )
    DOES 1 through 10, sued in their      )
21  individual and official capacities     )
    inclusive,                            )
22                                        )
                    Defendants.           )
23                                        )
                                          )
24                                        )
                                          )
25                                        )
                                          )
26                                        )
                                          )
27                                        )
                                          )
28  _____      )

Plaintiff Cyrus Sanai hereby alleges as follows:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 USC §1331.  Venue is proper in this district and Division because the defendants' place of work is within this district.

## THE PARTIES

2.      Plaintiff, CYRUS SANAI ("Sanai"), is an attorney admitted to practice in California and various federal courts who resides in the County of Los Angeles, State of California.

3.      Defendant, LEONDRA KRUGER, ("Kruger") is a justice of the California Supreme Court.  She has an undisclosed relationship with disgraced California lawyer, Thomas Girardi ("Girardi") who for decades was the judicial king-maker in California by virtue of his extraordinary monetary contributions to California's Democratic political leadership.

4.      Defendant, JOSHUA P. GROBAN ("Groban"), is a justice of the California Supreme Court.  He was appointed to the California Supreme Court after acting as the "Senior Advisor to Governor Jerry Brown and advised the governor on judicial appointments."  He claims that he "advised the governor on the appointment of over 600 judges, or roughly one out of every three judges in the state. He received numerous awards from bar groups and other legal organizations for his work on judicial appointments."  In this capacity, Groban was the primary tool of Girardi in ensuring that only those judges and Justices acceptable to Girardi were appointed by Brown.

5.     Defendant, MARTIN J. JENKINS ("Jenkins"), is a justice of the California Supreme Court.  Previously, he served as Senior Judicial Appointments Advisor to Governor Newsom.   In this capacity, Jenkins was the primary tool of Girardi in ensuring that only those judges and Justices acceptable to Girardi were appointed by Brown.

6.     Defendant, KELLI M. EVANS ("Evans") is a justice of the California Supreme Court. Previously, she served as Chief Deputy Legal Affairs Secretary Advisor to Governor Newsom.   In this capacity, Evans assisted Girardi in ensuring that only those judges and Justices acceptable to Girardi was appointed by Brown; she also worked in the State Bar at the time that it was under the control of Girardi and his puppet, former State Senator Joseph Dunn.

6.     Defendant, CAROL A. CORRIGAN  ("Corrigan"), is a justice of the California Supreme Court.

7.     Defendant, GOODWIN H. LIU  ("Liu"), is a justice of the California Supreme Court.

8.     Defendant, PATRICIA GUERRERO  ("Guerrero"), is chief justice of the California Supreme Court.

9.     DOES 1 to 10 are persons whose identity, role and capacity in the wrongs committed against Plaintiff are currently unknown.

## COMMON ALLEGATIONS AS TO FACIAL UNCONSTITUTIONALITY OF CALIFORNIA LAW

10.     For more than a decade, Thomas Girardi and his firm Girardi & Keese looted millions of dollars from his clients, who were often members of class that has been certified in state and federal court.  Girardi's criminal conduct was often conducted in cooperation with other law firms that worked with him pursuant to association agreements, whereby Girardi lent his name, prestige and corrupt judicial relationships to other firms.

11.    Girardi's misconduct did not go unnoticed by his clients, who filed lawsuits and bar complaints against him and his firm. However, Girardi was invulnerable because he had corrupted both sides of the State Bar of California, as well as the California Supreme Court.  *See* H. Ryan, M. Hamilton, "Vegas Parties, celebrities and boozy lunches: How legal titan Tom Girardi seduced the State Bar", *Los Angeles Times,* March 6, 2021.  Girardi played a key role in getting appointments to the federal courts, state courts, and State Bar.   M. Hamilton, H. Ryan, "'Real Housewives' attorney Tom Girardi used cash and clout to forge powerful political connections", *Los Angeles Times,* March 9, 2021.  On the State Bar prosecutorial side, Girardi had installed a mole, Tom Layton, who also served as a political fixer.  Thus none of complaints by his clients ever lead to any action until late 2019, when a series of federal court judges began to take actions against Girardi and his firm in class action cases.

12. While the corruption of a series of Bar Chief Trial Counsels has been explored in a series of articles in the *Los Angeles Times*, Girardi's influence in the judiciary has not received the same scrutiny.  Girardi was the undisputed king-maker for persons seeking to be appointed to the California state judiciary.  Girardi assisted in moving appointments forward for state and federal judges, and State Bar Court judges, as well as forging strong personal relationships with many. H. Ryan, M. Hamilton, "Tom Girardi gave millions to Democratic politicians.  Was the money stolen from clients?", *Los Angeles Times,* August 4, 2022 (discussing how Girardi "poured millions into local, state and national races personally and lined up additional donations from his wife, "Real Housewives of Beverly Hills" star Erika; the employees of his law firm; and the multitude of California trial lawyers who did business with him — or hoped to"); *see also* H. Keene, "Gavin Newsom has Longstanding Ties to Dem Power Player Facing Lawsuits, Investigations", *Fox News,* June 22, 2021 at www.foxnews.com/politics/gavin-newsom-ties-tom-girardi-lawsuit.

Girardi had close personal relationships with certain judges; so, for example and without limitation, in the case of former District Judge Tevrizian, he was a life-long friend; in the case of California Court of Appeal Justice Tricia Bigelow, he was her lover; and in the case of former LA Superior Court Judge Daniel J. Buckley, he was Buckley's legal idol.  *See* K. Reich, "Judges' Role in Cruise Sponsored by Lawyer's Group Raises Questions", *Los Angeles Times*, October 6, 1997 at www.latimes.com/archives/la-xpm-1997-oct-06-me-39832-story.html; H. Ryan, M. Hamilton, "Erika Jayne Under Fire After Alleging Judge's Involvement with Tom Girardi" *Los Angeles Times,* December 22, 2020; J. Kloczko, "Dating Tom: My Lunch dates with Famous Lawyer Guy Tom Girardi," The Debaser, May 9, 2021 at debaser.substack.com/p/lunch-with-tom?s=r ("Tom looked across the room and saw Daniel Buckley, who was the assistant presiding judge of Los Angeles County Superior Court. What happened next was amazing. He pointed at the judge, wagged his finger "come here," and the judge ran up to Girardi like a groupie. I was introduced to him, and a few weeks later we had lunch. Tom hooked it up.");  H. Ryan, M. Hamilton, "Erika Jayne Under Fire After Alleging Judge's Involvement with Tom Girardi" *Los Angeles Times,* December 22, 2020; H. Ryan, M. Hamilton, "A Judge's Affair with Tom Girardi and a $300000 Wire",  *Los Angeles Times,* August 31, 2022 (discussing Second Appellate District Judge Tricia Bigelow's adulterous affair with Girardi and the gifts and apparent bribes paid to her with stolen money from his clients).

13.     Girardi obtained this power through money stolen from his clients, who he liberally contributed to Democratic politicians such as former Governors Jerry Brown and current Governor Gavin Newsom as well as the all of the rising stars at the state and local levels.  As a result, Brown and Newsom regularly appointed his hand-picked candidates, who were often informed of their appointments at dinners at Girardi's home attended by the governors.  Defendants Groban and Jenkins were charged with accepting and evaluating Girardi's favored candidates, and were

COMPLAINT

instrumental in Girardi's retention of power within California's legal system due to their kow-towing to Girardi's candidate choices.  Even those appointees to state judicial positions who were not selected by Girardi had to obtain his approval to advance.  All of the Defendants except Guerrero were vetted by Girardi; Justices Kruger, Groban and Jenkins were Girardi's first choice for the positions, in the cases of Groban and Jenkins due to their close personal and professional relationships with Girardi.

14.    While Girardi was corrupting the State Bar, the Chief Trial Counsels, all of whom were under his control from 2009 until the collapse of his firm, and the approximately fifty percent of the State Bar Court judges who were influenced by him, were consistently more harsh and aggressive towards defendants who were not Girardi or under his protection.  This phenomenon of compensating bias of the judicial branch was recognized by the United States Supreme Court in *Bracy v. Gramley* (1997) 520 U.S. 899.  In *Gacho v. Wills,* No. 19-3343 (7th Cir. February 8, 2021), one of the many cases involving persons victimized by the corrupt judge in *Bracy,* the Seventh Circuit held that a party need not demonstrate actual bias, but instead may demonstrate an unconstitutional risk of bias, which is automatically met when the judicial branch has been corrupted.

15.    The California State Bar is part of the judicial branch.  *See* Judicial Council, "State Bar of California" at www.courts.ca.gov/3016.htm  ("The California State Bar Court acts as the administrative arm of the California Supreme Court in the adjudication of disciplinary and regulatory matters involving California attorneys.").  Likewise, the Chief Trial Counsel and her deputies are members of the Judicial Branch. *See Hirsh v. Justice of Supreme Court of California* (1995) 67 F.3d 708, 715 (holding that California state bar prosecutors are protected by quasi-judicial immunity).  Prosecutors appointed by judicial branch must be disinterested.  *Young v. U.S. ex rel Vuitton et Fils*, 481 U.S. 787 (1987).

16.    Under *Bracy,* the United States Supreme Court held that a party is entitled to demand discovery and disclosure from the corrupted judicial officials and institutions.  However, the California State Bar has refused to make these disclosures and indeed is currently fighting a mandamus proceeding before the California Supreme Court brought by the Los Angeles Times seeking disclosure of the many files related to complaints against Girardi.  *Los Angeles Times Communications LLC v. State Bar of California (Thomas v. Girardi)*, S269401.

17.    On the State Bar Court side of the State Bar, California's judicial ethics rules apply to State Bar Court judges.   *See* Cal. Code Jud. Ethics, Canon 6(A)("…a judge of the State Bar Court…is a judge within the meaning of this code").  Canon 3(E)(2) of the California Code of Judicial Ethics provides that a "judge shall disclose information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification."  Cal. Code Jud. Ethics, Canon 3(E)(2).  Disqualification of a State Bar Court judge is available under Code Civ. Proc. §170.1. This restricts recusal of a California State Bar Court judge to California state law grounds only.

18.    State Bar Court judges are appointed by both the California Supreme Court and the California Legislature.  Girardi's preferred candidates constitute approximately half of the nine Hearing Department and Review Department State Bar Court judges.  However, the exact circumstances and relationships between Girardi and the State Bar Court judges is a secret, because the judges of the Hearing Department and Review Department refuse to disclose their individual relationships with Girardi, his firm, and the lawyers who worked with and for him and the Review Department judges will not order any Hearing Department judge to disclose their relationship with Girardi.

19.    The refusal of the State Bar Court to require disclosure is approved by the State Bar Board of Trustees and the California Supreme Court, due to its desire

to avoid public scrutiny of the process by which State Bar Court judges have been appointed and who has influence over the process, and because a majority of justices do not want their relationships with Girardi publicly disclosed and examined. Indeed, to ensure that the same policy of proclaiming transparency while taking every step to conceal the State Bar's corruption is uninterrupted, the State Bar took the unprecedented step of reappointing the State Bar's Chairman of the Board of Trustees, Ruben Duran, to a second term.

20.     The refusal of the California Supreme Court to enforce requests for recusal under federal constitutional rules against State Bar Court Judges is consistent with the law regarding recusal by California Supreme Court justices. There is no procedural mechanism for a party to request recusal of a California Court of Appeal or Supreme Court justice.  *Hirsh v. Justices of Supreme Court of California,* 67 F.3d 708, 712 (9th Cir.1995) (acknowledging the "absence of a mandatory statutory recusal mechanism applicable to justices of the California Supreme Court"). Any attempt to move for the recusal of a Court of Appeal or California Supreme Court Justice will be stricken under *Kaufman v. Court of Appeal,* 31 Cal.3d 933 (1982), and/or *First Western Dev. Corp. v. Sup. Ct.,* 212 Cal.App.3d 860, 867 (1989). Accordingly, there is no mechanism to request a California Court of Appeal or Supreme Court justice under federal constitutional grounds of any kind, and there is no other mechanism to raise federal constitutional objections based on the right to an impartial adjudicator, in fact and in appearance, under federal law.

21. Where the judicial branch has been corrupted, a due process violation may arise whereby the judicial branch officials treat the persons who are not beneficiaries of the corruption more harshly in order to conceal or distract from their leniency to persons who have corruptly influenced the judicial branch.  *Bracy v. Gramley,* 520 U.S. 899 (1997).  In *Bracy,* the United States Supreme Court held that where such corruption has been established as likely, a party is entitled to discovery to determine

the scope and effect of such corruption.  In *Gacho v. Wills,* 986 F.3d 1067 (7th Cir. 2021), one of the many cases involving persons victimized by the corrupt judge in *Bracy*, the Seventh Circuit held that a party need not demonstrate actual bias, but instead may demonstrate an unconstitutional risk of bias, which is automatically met when the judicial branch has been corrupted.

22.     However, California law neither recognizes *Bracy* and *Gacho* claims against members of the judicial branch, nor will it allow evidence necessary to show a *Bracy* and *Gacho* violation to be introduced.  That's because California case law does not permit a party to enter a trial court's rulings or in-court statements as evidence to prove bias under either state or federal law.   *See Roitz v. Coldwell Banker Residential Brokerage Co.,* 62 Cal.App.4th 716, 724 (1998); *Jack Farenbaugh & Son v. Belmont Construction, Inc.,* 194 Cal. App.3d 1023, 1031 (1987); *People v. Guerra,* 37 Cal.4th 1067, 1112 (2006).  In *Guerra,* the California Supreme Court rejected judicial bias claims made under state and federal law, stating that "Defendant has a due process right to an impartial trial judge under the state and federal Constitutions….a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias".  *Id.*  To establish a claim of absence of impartiality under *Bracy* and *Gacho,* a litigant must do exactly what *Guerra* prohibits, pointing to the adverse rulings as evidence, along with corruption by third parties.  Federal law is the opposite of California, and a judge's rulings and statements in courts are admissible to show bias, even without other evidence. *Liteky v. United States* 510 U.S. 540, 551 (1994).  In *Liteky* the United States Supreme Court recognized that the statements and orders of a judge could, on their own, provide a proper basis for recusal:

> It is wrong in theory, though it may not be too far off the mark as a
> practical matter, to suggest, as many opinions have, that "extrajudicial
> source" is the only basis for establishing disqualifying bias or prejudice.
> It is the only common basis, but not the exclusive one, since it is not the
> exclusive reason a predisposition can be wrongful or inappropriate. A
> favorable or unfavorable predisposition can also deserve to be

> characterized as "bias" or "prejudice" because, even though it springs
> from the facts adduced or the events occurring at trial, it is so extreme
> as to display clear inability to render fair judgment. (That explains what
> some courts have called the "pervasive bias" exception to the
> "extrajudicial source" doctrine. *See, e. g., Davis v. Board of School
> Comm'rs of Mobile County,* 517 F.2d 1044, 1051 (CA5 1975), *cert.
> denied,* 425 U. S. 944 (1976).)

*Id.*

23.     The due process rights of respondents in State Bar proceedings are also

crippled by the absence of effective discovery proceedings, over and above the refusal

to recognize *Bracy, supra.*  Beginning in 2009, the State Bar Board of Trustees (led

by a Girardi Keese partner) began to rewrite the State Bar Court Rules of Procedures

to eliminate long-standing rights of due process, including the right to meaningful

discovery.  This roll-back was acknowledged by State Bar Court counsel in public

documentation published in 2017; thus while the State Bar Court addresses interests

that deserve the highest level of due process protection short of criminal

incarceration, a respondent has fewer due process rights than in a criminal and civil

case.

24.     At the appellate level, there is no mechanism to investigate whether a

Court of Appeal or Supreme Court justice has a conflict of interest.  Indeed, where a

Supreme Court justice, Justice Kruger, has recused herself in a case involving

Girardi, she and the other Defendants have denied a motion to disclose the reason for

recusal or her relationship with Girardi.   Each of the Defendants has a financial

interest in keeping their relationships with Girardi and members of his Cabal a

secret, because any connection to Girardi's corruption could lead to investigation by

the California Legislature, the California Judicial Performance Commission, removal

by the latter, or losing a judicial retention election.

1

2

3

## COMMON ALLEGATIONS AS TO AS APPLIED
## UNCONSTITUTIONALITY OF CALIFORNIA LAW

4

5

25.     Between 2005 and 2010 Plaintiff Cyrus Sanai caused a state court

6

judge, Elizabeth Grimes, to be removed from a case by the Court of Appeal for bias;

7

in response, through her attorney Frederick Bennett, she filed two bar complaints

against Sanai, both of which were ignored.

8

9

26.     While this was ongoing, Sanai humiliated a federal appellate judge,

10

Alex Kozinski, by filing a meritorious misconduct complaint against him; discovering

11

his pornography server through which he beamed smut into his chambers and the

12

chambers of his best friend on the Ninth Circuit, Stephen Reinhardt; and in 2010

13

opposed the nomination of Grimes to the Court of Appeal, forcing her attorney,

14

Frederick Bennett, to falsely deny to the Commission on Judicial Appointments that

he had filed a bar complaint on her behalf.

15

16

27.     After Kozinski had his wrist slapped, the Ninth Circuit Judicial Council

17

in 2010 issued a censure of Sanai for his efforts to bring both Kozinski and his

18

protectors in the Court to account.  *See In Re Complaint of Judicial Misconduct* (9th

Cir. 2010) 623 F. 3d 1101.  It also sought to disbar Sanai, but its efforts ran aground

19

because the Council would not provide documents or witnesses to the Chief Trial

20

Counsel and her lawyers (collectively, the "Office of Chief Trial Counsel" or "OCTC").

21

Acting through former Circuit Executive Catterson, former Chief Counsel Jayne Kim

22

approved a Notice of Disciplinary Charges in *In Re Sanai*, 10-O-09221 and 12-0-

23

10457 that revived dismissed charges of misconduct and sought to punish Sanai for

24

his blowing the whistle on Kozinski.

25

28.     During the pre-trial process in this case, the OCTC handed over

26

documents demonstrating that Bennett had mislead the Commission on Judicial

27

Appointments, but refused to hand over hundreds of potentially exculpatory

28

documents.  Sanai sought pre-trial deposition subpoenas and discovery from the OCTC, all of which was denied by State Bar Court Judge Miles.

29.    At trial, the OCTC's case collapsed.  In two separate orders, Judge Miles dismissed eight out of nine charges.   The charges brought regarding Sanai's interactions with Kozinski and the Ninth Circuit Judicial Council were dismissed for lack of evidence.  One count arising from the *Sanai v. Saltz* case over which Grimes presided was dismissed after a Superior Court clerk recanted her testimony and Judge Miles found it had been influenced by the Grimes' successor and opposing counsel, Michael Saltz. Sanai also introduced evidence that Saltz had ex parte back channel communications with the Superior Court in the case, Judge Terry Green. Judge Miles explicitly found that the Court clerk had been jointly influenced by coordinated pre-hearing ex parte witness contact by Terry Green.  All but one of the remaining charges were dismissed as an issue and evidence sanction for the refusal of the State Bar to disclose records which Sanai subpoenaed.

30.    State Bar Court Judge  Miles then abated the case and it was stayed for four years.  In the interim, Kozinski and his friend Reinhardt's sexual harassment (in person and through Kozinski's server) were publicly exposed.

31.    Judge Miles retired and was replaced by State Bar Court Judge Valenzuela.  Judge Valenzuela was placed on the State Bar Court thanks to the machinations of Girardi and his cabal.  She was selected because she agreed with the Girardi philosophy of litigation, which is that counsel's outside relationships with judges and tribunal members should be the most important criterion for litigation and legal success.  Her relationship with Girardi and his cabal are such that she is hostile against any respondent who claims that improper judge and lawyer relationships are valid defenses in state bar disciplinary cases and merit discovery and exposure, because such relationships were the key to Girardi's success as a lawyer, while his relationships with State Bar Trustees, investigators, and

prosecutors gave him free reign to steal additional moneys from his clients.  Because of Judge Valenzuela's full acceptance of the Girardi principles of litigation, she was violently and strongly prejudiced against Plaintiff, who has already demonstrated the kind of judge/opposing counsel collusion before Judge Miles that Valenzuela was placed on the State Bar Court to validate and protect.

32.    After Judge Valenzuela restarted the case, Sanai sought to enforce trial subpoenas served in 2014 and 2015 and conduct additional third-party deposition subpoenas.  Valenzuela quashed the trial subpoenas (including subpoenas as to which no motion to quash had been made), denied all requests to compel witnesses to appear or to produce documents, and issued a protective order barring Sanai from issuing future trial subpoenas against judges without her permission.  Sanai filed multiple petitions for interlocutory review, all of which were denied on August 3, 2020.

33.    However, the trial did not resume.  Sanai was stricken by Grave's Disease, aka Thyroid Eye Disease, and his vision was useless beyond five feet or so. The case was abated while Sanai underwent treatment, which restored about 95% of his eyesight by July of this year.

34.    At the status conference on July 19, 2021 Judge Valenzuela was informally asked by Sanai to explain why she recused herself from the State Bar Court case against Thomas Girardi, *In Re Girardi.*  *See* Order, *In Re Girardi,* SBC-21-O-30192, filed April 1, 2021.  Sanai explained how the Los Angeles Times revelations had created an issue of due process under *Bracy, supra.* She refused to answer.  Judge Valenzuela stated that she would not consider any motion to recuse or for other relief so long as the case continued to be abated.  Because the grounds for abatement no longer applied, Sanai stipulated to lifting the abatement.

35.    Over Sanai's objection, the trial date was set for October 5, 2021.  State Bar Court Judge Valenzuela's order references the potential filing of a motion to

recuse her.  *Id*. at 49.   Sanai  in fact mentioned both a motion to recuse or to disclose, and after careful consideration he decided that a motion to recuse was required first, because there was the theoretical possibility that Judge Valenzuela recused herself because she had interests that would make a reasonable person suspect she was biased against Girardi.

36.     Sanai filed a motion for disclosure and August 13, 2021 and a motion to continue the trial.  Judge Valenzuela denied both more than a month later, on September 20, 2021.  She contended that she was only required to disclosure "conflicts of interest" and not other grounds for recusal recognized under the law. The State Bar Review Department, the appellate department of the State Bar Court denied a petition for interlocutory review on September 24, 2021.  The California Supreme Court denied a petition for interlocutory review on September 29, 2021. Justice Kruger did not recuse herself from the proceeding involving the denial of review, even though the issue presented to the Court involved disclosure by a member of the judicial branch of their relationship with Girardi, and Kruger has a financial interest in determination of the legal question of disclosure.

37.     The rulings of Judge Valenzuela and the Review Department on these issues are final; the order of the California Supreme Court denying interlocutory review are not final.

38.     Trial was set for October 5, 2021.  Sanai issued trial subpoenas against Judge Valenzuela, and Michael Saltz, all of which Judge Valenzuela quashed, except for the subpoena of Michael Saltz, which was not able to be served.  The trial then occurred.  Sanai made the best defense he could.

39.     On January 4, 2022 Judge Valenzuela issued a Decision in this case imposing a 60 day suspension.

40.     On January 5, 2022 Sanai filed a motion to extend time to file a motion for new trial under Rules Proc. of State Bar, rule 5.114 and a motion for

reconsideration under Rules Proc. of State Bar, rule 5.115 by an additional 30 days as permitted under Rules Proc. of State Bar, rule 5.29(A), along with providing a copy of the transcript of the trial before Judge Valenzuela and a copy of the final Exhibit List prepared by the Clerk.  The time for obtaining transcripts from the effectuation department is currently two weeks plus time for mailing.  Accordingly, it would have been impossible for Sanai to separately pay for an obtain a transcript and make the 15 day deadline.

41.     The OCTC opposed the motion without argument on January 10, 2022. Sanai filed a reply on January 11, 2022.

42.     On January 12, 2022 an order denying the motion was served by email. In addition, Judge Valenzuela provided a "clarification" of the record that raised more new issues.  She stated that the proper way to obtain the transcript was to pay for it, which as noted above, would not result in the transcript arriving in time to prepare and file motions within 15 days.  She refused to provide a copy of the Clerk's Exhibit list.  Sanai filed a Petition for Interlocutory Review on February 1, 2022, which was rejected on technicality.  Sanai filed a motion for leave to file the petition for interlocutory review.  The motion was granted, but the petition was denied on February 11, 2022.

43.     Sanai filed a motion to re-open the record on March 4, 2022.  The motion was denied on March 16, 2022. On March 18, 2022 Sanai filed a timely request for review.

44.     The due date for Sanai's opening brief before the Review Department was set by an order dated June 27, 2022 as follows:

> On June 7, 2022, respondent filed a motion to extend time to file his opening brief to August 8, 2022. On June 9, 2022, we granted respondent's motion in part, extending the deadline to file his opening brief to July 1, 2022. Our order indicated that no additional extensions were
> contemplated.
> On June 24, 2022, respondent filed a motion for two separate 30-day extensions of time to file his opening brief, arguing that he intends

1

2

to file a motion to remand. We deny respondent's motion for failure to show good cause for the extensions. (Rules Proc. of State Bar, rule 5.152.1.) His brief remains due on July 1, 2022.

3

Order of June 27, 2022.

4

5

6

7

8

9

45.    Sanai did not file his opening brief with the Review Department on July 1, 2022.  Because no order had been entered eliminating the default notice period, the earliest a valid default notice could have been served by email would have been the next court day, July 5, 2022, and the drop-dead deadline would have been July 12, 2022; if printed and served by mail, the deadline would have been one day earlier, on July 11, 2022.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

46.    Nonetheless, on July 8, 2022 at 2:45 pm,  Sanai received a notice of dismissal executed by the Review Department, stating that after proper giving of the Clerk's notice,  he had failed to file his opening brief, so the appellate proceedings were dismissed with prejudice.  In fact, no such notice was ever received by Sanai; the docket shows that no notice was ever given, and the Clerk, when contacted by email and telephone first refused to send a copy of the alleged notice when he demanded it, and then claimed that issuing a notice was not the Review Department's "protocol".  There are two problems with this contention.  First, it is not true; the Review Department's protocol is to provide such notices.   The second problem is that the dismissal order makes an explicit finding that such notice was given: "As Cyrus Mark Sanai failed to file an opening brief after having been notified by the Clerk in accordance with rule 5.152(D) of the Rules of Procedure of the State Bar", which notice must state "that the brief must be filed within five days after the Clerk's notice is served or (1) The request for review will be dismissed with prejudice; and (2) If no other party requested review, the hearing judge's decision will become the State Bar Court's final decision." The requirements of what must be in the notice are clear and the required notice was not given.

27

28

47.    Sanai filed a timely motion for reconsideration with the Review Department on July 27, 2022.  This motion fully exhausted Sanai's administrative

remedies before the State Bar Court.   It was denied by the order dated August 11, 2022; accordingly, the original order dismissing the request for review based on the failure to file an opening brief after a Clerk's order of default is still in effect and the official grounds for dismissal of the request for review is based on a manifestly false finding of procedural fact.

48.     The request for reconsideration was denied because, according to the Review Department, Sanai "has failed to present new facts, circumstances, or law that supports his request for reconsideration, it is denied for lack of good cause." However, all of the "facts, circumstances or law" in the motion were new, because the question of dismissal was not litigated, and could not be litigated, prior to the dismissal actually occurring.  The Review Department Acting Presiding Judge therefore denied the motion for reconsideration on grounds that were manifestly false—all of the argument, facts, circumstances and law in his motion were new.

49.     Sanai filed a timely request for review with the California Supreme Court of his disciplinary case, which is currently under review with the California Supreme Court.  *See Sanai on Discipline,* S276140.  Since the creation of the State Bar Court system four decades ago, the California Supreme Court has never ruled in favor of a lawyer challenging discipline.

50.     Sanai has for several years represented Peyman Roshan, who is challenging his attorney discipline in state and federal court.  Mr. Roshan defeated three-quarters of the charges against him but lost on certain charges. The California Department of Real Estate ("DRE") initiated a reciprocal discipline proceeding based on the discipline imposed by the California Supreme Court under Cal. Bus. and Profs. Code § 10177(f).  *Accusation of Roshan* ("Beykpour"), H-12623 SF.  In order to prevail, the DRE must demonstrate that the California Supreme Court, as the state licensing authority, explicitly imposed discipline "for acts that, if done by a real estate licensee, would be grounds for the suspension or revocation of a California real estate license".  However, only some of the charges on which the State Bar won meet

that standard, and the California Supreme Court has held, when it denies review, it is only stating that it found at least one charge to be valid basis for the discipline; in Roshan's case, not all of the charges as to which the State Bar Court recommended discipline also constitute reciprocal grounds for DRE discipline. *In Re Rose,* 22 Cal.4th 430, 448 (2000). The DRE has refused to obtain the internal California Supreme Court express findings explaining which of the charges for which discipline was recommended were deemed valid. To protect Roshan's ability to mount a defense based on the explicit statutory elements for reciprocal discipline, on March 6, 2023 Sanai issued two subpoenas on the California Supreme Court for Roshan's disciplinary records in the California Supreme Court, which were served on March 8, 2023. This puts Sanai in direct litigation conflict with the judicial body currently deciding whether to suspend him. However, Sanai has no means to request disqualification of the presiding justices.

## **FIRST CAUSE OF ACTION**
### **RELIEF UNDER 42 U.S.C. §1983 (FACIAL)**

(By Plaintiff Sanai as Against Defendants and Does 1 through 10, inclusive)

51.    Plaintiff hereby incorporates by this reference paragraphs 1 through 50 as if set forth in full.

52.    In *Bracy, supra,* the United States Supreme Court held that were the facts of a judicial branch corruption are reasonably established, a defendant in the same court is entitled to obtain evidence to show that he has been subjected to unduly harsh treatment by the judicial branch as compared to those defendants or potential defendants who corrupted the judicial branch.

53.    Sanai has sought the evidence in his own files to show the improper influence third parties have had in his prosecution. Judge Miles, who originally was assigned this case, ordered such documents to be produced, and when they were not,

he ordered issue and evidence sanctions that resulted in dismissal of six of the nine counts against Sanai. However, Sanai's efforts to obtain those documents under Judge Valenzuela have been denied.

54. Judge Valenzuela, like half of her colleagues, had some sort of relationship with Girardi, but she refuses to disclose the relationship or state she has no relationship, and instead contends that she has no "conflict of interest." However, the United States Supreme Court had held that there does not need to be a conflict of interest in a financial or other sense for a tribunal to be biased in the constitutional sense; it is sufficient for a judge's past to show evidence she would be "psychologically wedded" to a predisposition for bias. *See Williams v. Pennsylvania,* 579 U.S. ___, 136 S. Ct. 1899 (2016).

55. Even though the documents in Sanai's own file have been ruled not to be privileged, he has been denied access to them by the OCTC's simple refusal to produce them and her willingness to lose two-thirds of its case to protect the information therein. The other files that Sanai would have to access to show compensating bias, which are the files regarding Girardi, will not be disclosed by the OCTC unless he is ordered to do so by a federal court.

56. Plaintiff Sanai's case presents a prima facia example of disparate treatment. That same year that the Judicial Council censured Sanai, the Ninth Circuit Court of Appeals issued a reprimand of a very different lawyer, Tom Girardi and suspended one of his legal co-venturers, Thomas Lack, for presenting fraudulent documents to the Court of Appeal. *See In Re Girardi,* 611 F. 3d 1027 (9th Cir. 2010). In this proceedings Girardi and Lack attempted to enforce a default judgment in Nicaragua against non-existent defendants with similar names to major corporations, Dole and Shell Chemical Co. The actual Dole company sought to intervene in the proceedings but was denied. Lack and Girardi presented fraudulent translations of the Nicaraguan judgment to attempt to have the nearly half a billion

judgment enforced against both Dole and Shell.

57.     In the sanctions proceedings, Girardi's defense was that he did not read the briefs or documents submitted to the Court of Appeals.  The Ninth Circuit wrote that:

> Girardi's practice of authorizing the Lack firm to sign his name on briefs that turned out to contain falsehoods may raise separate ethical questions, but with respect to the specific misrepresentations identified in the order to show cause, Girardi's proven conduct is at most reckless, and the recklessness inheres in his mode of practice, not in any specific action he took in the enforcement action or the appeal.

*In Re Girardi, supra,* at 1027

58.     Despite this judicial indictment, the OCTC took no action against Girardi.  Lack was also not disciplined; the Board of Trustees assigned investigation of the matter to an attorney who counted Girardi's firm and Lack's firm as clients, and who not surprisingly found that, with respect to Lack, there was no improper intent, notwithstanding the findings of four federal judges that there were.  Nor did the OCTC take actions on dozens of complaints against Girardi for failing to pay over money to his clients addressed by the Bar.

59.     Sanai has a due process right to an impartial tribunal in the actual constitutional sense, and, under *Bracy,* the right to obtain information relevant to that issue.  The State Bar Court and the California Supreme Court have denied Sanai the right to obtain such information as to both the State Bar Court and the California Supreme Court.  This denial violates Sanai's right to due process.  Because this is an issue that relates to question of whether the California Supreme Court is biased in the constitutional sense, *Younger* abstention does not apply.  *Gibson v. Berryhill* (1973) 411 U.S. 564.  Perhaps more important, there is no *Younger* abstention because the defendants have explicitly contended, and the state courts have ruled, that Sanai has no right to obtain evidence necessary to show constitutional  bias under *Bracy.  See Middlesex  County  Ethics  Comm.  v.  Garden State  Bar  Assn* (1982) 457  U.  S.  423,  432  (1982). There are no state court

procedures available to Sanai to vindicate his constitutional arguments, because he is not allowed the evidence in his file or to obtain discovery against the judicial branch.

60.     The State Bar Court discovery procedures are less for a lawyer facing disciplinary charges than a defendant in either a civil case or criminal case in California.  State Bar Court Valenzuela refused Sanai basic information necessary to prove his theory because there is no right to obtain such evidence, and she refused to exercise her discretion to provide it because she is in actuality biased against Sanai and any victim of judge/opposing counsel (unless the victim was Girardi and his cabal).

61.     As to California appellate justices, the discovery procedures are non-existent.  A litigant cannot initiate discovery against appellate judges or justices at the appellate level under California law, and there his no procedural mechanism to request recusal.  If an appellate justice does recuse under circumstances that would suggest others justices should recuse, there is no means to discovery the reason for recusal and a request for disclosure will be denied.  *See Los Angeles Times v. State Bar (Girardi),* S269401 Order of December 12, 2022 denying motion for Justice Kruger to disclosure why she recused herself.

62.     An additional reason that there is no *Younger* abstention is that these proceedings follow a pattern of bad faith harassment by the Chief Trial Counsel Lawrence.  State Bar Court Judge Miles already determined that the State Bar filed one count against Sanai knowing it would lose, and let six others be dismissed instead of producing documents

63.     There is no *Rooker-Feldman* issue applicable to a case that is ongoing, or where a party seek to compel disclosure of evidence, even if such disclosure might affect a court judgment. *Skinner v. Switzer* 562 U.S. 521 (2011).

64.     Sanai is entitled to a temporary restraining order and preliminary injunction against conducting the remainder of his attorney discipline proceedings until the facts necessary to determine the nature and scope of bias that applies to

him and persons not related to Girardi, his firm, and his colleagues in other firms who continue to enjoy the fruits of his corruption of the State Bar, the State Bar Court and California Supreme Court.  This Court should issue a permanent injunction, if a declaratory judgment is not available or recognized, ordering (a)  all disciplinary proceedings against Sanai are enjoined;  (b) the trial may only be re-opened in front of a new State Bar Court judge with Sanai entitled to have full discovery and witnesses that would be available in a civil trial, criminal trial, or both; (c) that the California Supreme Court's *Guerra* decision is unconstitutional and that a state court jurists statements and rulings may be entered as proof of bias; and (d) that the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule.

65.    Sanai  is entitled to a declaratory judgment against all defendants that:

a.    under *Bracy*, Sanai and anyone similarly situated to him has the right to obtain documentary evidence and conduct depositions and have testify at trial members of the judicial branch regarding bias;

b.    the California Supreme Court's holding in *Guerra, supra,* is unconstitutional and that the rulings and actions of a state court tribunal on their own may be used to prove actual bias or bias under the federal standard;

c.    the State Bar Court Rules of Procedure are unconstitutional in that they do not provide for constitutionally adequate discovery and rights to call witnesses;

d.    the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule; and

e.    the prosecution of Sanai by OCTC was unconstitutional under *Bracy*.

## SECOND CAUSE OF ACTION

### EX PARTE YOUNG

(By Plaintiff Sanai as Against Defendants and Does 1 through 10, inclusive)

66.    Plaintiff hereby incorporates by this reference paragraphs 1 through 50 and 51 to 63 as if set forth in full.

67.    The Ninth Circuit recognizes a common-law cause of action for injunctive relief against state-defendants in their official capacity. *Moore v. Urquhart,* 899 F.3d 1094, 1103 (9th Cir. 2018).

68.    Plaintiff  Sanai is entitled to a temporary restraining order and preliminary injunction against the Defendants conducting the remainder of his attorney discipline proceedings proceedings until the facts necessary to determine the nature and scope of bias that applies to him and persons not related to Girardi, his firm, and his colleagues in other firms who continue to enjoy the fruits of his corruption of the State Bar at the State Bar Court and California Supreme Court level.  The Court should issue a permanent injunction ordering  (a)  all disciplinary proceedings against Sanai are enjoined;  (b) the trial may only be re-opened in front of a new State Bar Court judge with Sanai entitled to have full discovery and witnesses that would be available in a civil trial, criminal trial, or both; (c) that the California Supreme Court's *Guerra* decision is unconstitutional and that a state court jurists statements and rulings may be entered as proof of bias; and (d) that the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule.

69.     Plaintiff is entitled to a declaratory judgment against all defendants that:

a.     under *Bracy*, Sanai and anyone similarly situated to him has the right to obtain documentary evidence and conduct depositions and have testify at trial members of the judicial branch regarding bias;

b.     the California Supreme Court's holding in *Guerra, supra,* is unconstitutional and that the rulings and actions of a state court tribunal on their own may be used to prove actual bias or bias under the federal standard;

c.     the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule; and

d.     the prosecution of Sanai by was unconstitutional under *Bracy*.

## THIRD CAUSE OF ACTION
## DECLARATORY JUDGMENT

(By Plaintiff Sanai as Against Defendants and Does 1 through 10, inclusive)

70.     Plaintiff hereby incorporates by this reference paragraphs 1 through 50 and 51 to 63 as if set forth in full.

71.     Plaintiff is entitled to a declaratory judgment against all defendants that:

a.     under *Bracy*, Sanai and anyone similarly situated to him has the right to obtain documentary evidence and conduct depositions and have testify at trial members of the judicial branch regarding bias;

b.     the California Supreme Court's holding in *Guerra, supra,* is unconstitutional and that the rulings and actions of a state court

tribunal on their own may be used to prove actual bias or bias under the federal standard;

c.   the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule; and

d.   the prosecution of Sanai by was unconstitutional under *Bracy*.

72.   A declaratory judgment is a prerequisite to obtaining injunctive relief against state court judges where such a judgment can be obtained at first under 42 U.S.C. §1983, but not under the Ninth Circuit's *Ex Parte Young* remedy.  Here, a declaratory judgment can be obtained.  Accordingly Sanai seeks such a declaratory judgment alongside injunctive relief.

**WHEREFORE,** Plaintiff Cyrus Sanai respectfully demand the following relief on behalf of himself:

On the First Cause of Action

1.   A temporary restraining order and preliminary injunction against Defendants conducting any discipline proceedings against Sanai  until the facts necessary to determine the nature and scope of bias under *Bracy* that applies to him and persons not related to Thomas Girardi, his firm, and his colleagues in other firms who continue to enjoy the fruits of his corruption of the State Bar and California Supreme Court.

2.   A declaratory judgment against all defendants that:

a.    under *Bracy*, Sanai and anyone similarly situated to him has the right to obtain documentary evidence and conduct depositions and have testify at trial members of the judicial branch regarding bias;

b.    the California Supreme Court's holding in *Guerra, supra,* is unconstitutional and that the rulings and actions of a state court tribunal on their own may be used to prove actual bias or bias under the federal standard;

c.    the State Bar Court Rules of Procedure are unconstitutional in that they do not provide for constitutionally adequate discovery and rights to call witnesses;

d.    the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule; and

e.    the prosecution of Sanai by was unconstitutional under *Bracy*.

3.    Reasonable costs incurred and attorney fees.

<u>On the Second Cause of Action</u>

1.    A temporary restraining order and preliminary injunction against Defendants conducting any discipline proceedings against Sanai  until the facts necessary to determine the nature and scope of bias under *Bracy* that applies to him and persons not related to Thomas Girardi, his firm, and his colleagues in other firms who continue to enjoy the fruits of his corruption of the State Bar and California Supreme Court.

2.    A permanent injunction ordering  (a)  all disciplinary proceedings against Sanai are enjoined;  (b) the trial may only be re-opened in front of a new

State Bar Court judge with Sanai entitled to have full discovery and witnesses that would be available in a civil trial, criminal trial, or both; (c) that the California Supreme Court's *Guerra* decision is unconstitutional and that a state court jurists statements and rulings may be entered as proof of bias; and (d) that the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule.

3.      Reasonable costs incurred in this action.

### On the Third Cause of Action

1.      A declaratory judgment against all Defendants that:

    a.      under *Bracy*, Sanai and anyone similarly situated to him has the right to obtain documentary evidence and conduct depositions and have testify at trial members of the judicial branch regarding bias;

    b.      the California Supreme Court's holding in *Guerra, supra,* is unconstitutional and that the rulings and actions of a state court tribunal on their own may be used to prove actual bias or bias under the federal standard;

    c.      the State Bar Court Rules of Procedure are unconstitutional in that they do not provide for constitutionally adequate discovery and rights to call witnesses;

    d.      the California Supreme Court's authority barring discovery against appellate justices and filing recusal motions is unconstitutional and no further proceedings may be conducted at the appellate level until such rights are acknowledged and codified by rule; and

e.    the prosecution of Sanai by the OCTC  was unconstitutional

under *Bracy*.

3.    Reasonable costs incurred in this action.

Dated:    March 8, 2023

By:    /s/CYRUS SANAI
SANAIS
In pro per.

COMPLAINT