UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYRUS SANAI,<br><br>    Plaintiff,<br><br>    v.<br><br>LEONDRA KRUGER, et al.,<br><br>    Defendants. | Case No. 23-cv-01057-AMO<br><br>**ORDER GRANTING IN PART EX PARTE EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT AND DENYING EX PARTE MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Re: Dkt. Nos. 37, 40 |

Before the Court are Mr. Sanai's "Ex Parte Emergency Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) or for Relief from Order and Judgment Pursuant to Fed. R. Civ. P. 60(b)," ECF 37, and (2) "Emergency Ex Parte Motion for Injunction Pending Appeal," ECF 40. The Court finds the motions suitable for disposition without oral argument pursuant to Civil L.R. 7-1(b). Having considered the papers filed in this matter, the relevant legal authority, and good cause appearing, the Court GRANTS IN PART the motion to alter or amend judgment and DENIES the motion for injunction pending appeal.

**I.  BACKGROUND**

On March 9, 2023, Mr. Sanai commenced this action for violation of 42 U.S.C. § 1983 and declaratory and injunctive relief against the Justices of the California Supreme Court. ECF 1 at 2-3, 18-25. Following the Clerk's entry of default, ECF 20, on July 10, 2023, Mr. Sanai filed an amended ex parte motion for entry of default judgment and an ex parte motion for leave to file an overlength motion for default judgment. ECF 32, 33. On July 11, 2023, Mr. Sanai filed an emergency ex parte motion for temporary restraining order, declaratory judgment, and preliminary injunction in connection with state bar disciplinary proceedings. ECF 34.

On July 31, 2023, the Court dismissed the case with prejudice, entered judgment against

Mr. Sanai, and denied all pending motions as moot. ECF 35, 36. Mr. Sanai moved to alter or amend judgment, or alternatively, for relief from judgment, on August 3, 2023. ECF 37. He filed an ex parte motion for injunction pending appeal on August 14, 2023. ECF 40.

## II.  LEGAL STANDARDS

### A.  Motion to Alter or Amend Judgment

Rule 59(e) to the Federal Rules of Civil Procedure allows a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is 'necessary to correct *manifest errors of law or fact upon which the judgment is based*;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in controlling law.'" *Turner v. Burlington N. Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1254 n.1 (9th Cir. 1999) (emphasis in original)). Rule 59(e) allows courts only to address "matters properly encompassed in a decision on the merits," and "will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quotation marks and citation omitted). "The motion is therefore tightly tied to the underlying judgment." *Id.*

Federal Rule of Civil Procedure 60(b) likewise authorizes a party to seek relief from a judgment or order. Fed. R. Civ. P. 60(b). "The moving party under Rule 60(b) is entitled to relief from judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from the operation of the judgment." *Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001). "'[E]xtraordinary circumstances' must justify reopening." *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, n.11 (1988)).

A motion for relief is treated as a motion under Rule 59(e) if it is filed timely under that rule; otherwise, it is treated as a motion under Rule 60(b). *Am. Ironworks & Erectors, Inc.*, 248

F.3d at 898-99.

### B. Motion for Injunction Pending Appeal

Federal Rule of Civil Procedure 62(d)[1] provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). A motion for an injunction pending appeal is considered under the same standard as a motion for a preliminary injunction. *See Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988). To prevail, the party seeking relief must show (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council. Inc.*, 555 U.S. 7, 20 (2008).

Some courts have cautioned against "rigid" application of the likelihood of success factor when an injunction is sought pending appeal. "[I]f it were, an injunction would seldom, if ever, be granted 'because the district court would have to conclude that it was probably incorrect in its determination on the merits.'" *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (quoting *Oregon Natural Res. Council v. Marsh*, Civ. No. 85-6433-E, 1986 WL 13440, *1 (D. Or. 1986)). "Such a result would not be consistent with the express language of Rule 62[d] which contemplates the possibility that the district court may grant an injunction pending appeal from an interlocutory order denying preliminary injunction." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, No. 15-CV-03415-EMC, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016). Where a district court has "'ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained[,]'" *Protect Our Water*, 377 F. Supp. 2d at 884 (quoting *Wash. Metro. Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)), "an

---

[1] "The provisions of Rule 62(d) were formerly set forth in Rule 62(c)." *United States v. Birdsong*, No. CV 17-72-M-DWM, 2019 WL 1026277, at *1 (D. Mont. Mar. 4, 2019), *aff'd*, 804 F. App'x 687 (9th Cir. 2020). Accordingly, the Court has considered caselaw analyzing Rule 62(d) as originally numbered and as currently re-numbered.

injunction pending appeal may be appropriate, even if the Court believed its analysis in denying preliminary injunctive relief is correct." *Am. Beverage Ass'n*, 2016 WL 9184999, at *2.

### III. DISCUSSION

The Court will first address Mr. Sanai's motion to alter or amend judgment[2] and will then turn to his motion for injunction pending appeal.

#### A. Motion to Alter or Amend Judgment

Mr. Sanai argues that he is entitled to relief under Rule 59(e) for three reasons. He first argues that the Court erred in finding that the third element for *Younger* abstention[3] was met. ECF 37 at 13-17. He next argues the Court erred in failing to find that the actual bias of the state court bar judge presents exceptional circumstances that preclude *Younger* abstention. *Id.* at 17-19. Finally, Mr. Sanai argues that the Court erred by relying on caselaw that is "decades superseded." *Id.* at 19. The Court addresses each argument in turn.

Mr. Sanai asks the Court to revisit its finding as to the third element for *Younger* abstention because:

> The Court's first error is failing to analyze the relevant time for determining all the elements. The Court correctly determines the relevant time for the first element, but not the third. It states that ["]the California Supreme Court's rules relating to Bar Court decisions provide for an adequate opportunity for a plaintiff to present federal constitutional claims" from an unpublished decision of five years ago. A lot can happen in five years. The issue is not whether the rules five years ago gave an adequate opportunity; the question is whether Sanai has that opportunity right now.

ECF 37 at 14.

Mr. Sanai asserts that he "could not raise any constitutional argument" in the state bar proceedings because the "confessions by the State Bar" were not published March 10, 2023, until

---

[2] The Court analyzes Mr. Sanai's motion for relief from judgment under Rule 59(e) because Mr. Sanai he filed his motion within 28 days from entry of judgment. *See Am. Ironworks & Erectors, Inc.*, 248 F.3d at 898-99.

[3] "Absent 'extraordinary circumstances', abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982)).

after he filed his petition for review. ECF 37 at 15. He then "only had 20 days to review the State Bar's redacted reports and prepare a petition for rehearing based thereof," for which an extension of time was denied. *Id.* His request to file an amended petition for rehearing based on a law360.com published the day after his petition was also denied. *Id.* at 15-16. Only after the petition was filed had "the State Bar revealed it had criminally referred certain of its past employees and made referrals to the Fair Political Practices Commission" and released a referral letter "showing that the first hearing department Judge in Sanai's State Bar Court proceedings, Donald Miles, was part of the Girardi Cabal in the State Bar who failed to report his gifts." *Id.* at 16.

Mr. Sanai argues that this "procedural bar on presenting post-judgment arguments to the California Supreme Court, including constitutional arguments, where the grounds for the delay in presenting the arguments is the misconduct of the State Bar, eliminates the application of *Younger* abstention under the case law." *Id.* at 16. He adds that "it was not until July 23, 2023 that Sanai had the explicit statements of the State Bar that it was not complying with the constitutional *Brady* standards required by the Fourteenth Amendment and Bus. & Prof. Code §6085(b), which standards it has stated in writing apply under the statute." *Id.*

These arguments do not demonstrate a basis for relief under Rule 59(e). The Court determined that the third element for *Younger* abstention was met in keeping with existing law. ECF 35 at 3. Mr. Sanai takes issue with the timing of a decision—*Robertson v. Honn*, No. 17-CV-01724-JD, 2018 WL 2010988, at *2 (N.D. Cal. Apr. 30, 2018), *aff'd,* 781 F. App'x 640 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 948 (2020)—cited in the Court's order for the proposition that "the California Supreme Court's rules relating to Bar Court decisions provide for an adequate opportunity for a plaintiff to present federal constitutional claims." ECF 37 at 14; ECF 35 at 3. Regardless *Robertson*'s timing, it correctly articulates the law in the Ninth Circuit. *See Hirsh*, 67 F.3d at 713 ("Refusing to abstain would require presuming that the California Supreme Court will not adequately safeguard federal constitutional rights, a presumption the U.S. Supreme Court rejected in *Middlesex*.") (citing *Middlesex Cty.*, 457 U.S. at 431); *Rosenthal v. Justices. of the Supreme Court of Cal.*, 910 F.2d 561, 565 (9th Cir. 1990) ("The State of California provides

attorneys subject to discipline with more than constitutionally sufficient procedural due process."). Granting his Rule 59(e) motion based on the arguments Mr. Sanai advances here would require the Court to depart from binding authority. The Court declines to do so.

Mr. Sanai next argues that *Younger* abstention does not apply because of actual bias by State Bar Court Judge Valenzuela:

> Judge Valenzuela was placed on the State Bar Court thanks to the machinations of Girardi and his cabal. She was selected because she agreed with the Girardi philosophy of litigation, which is that counsel's outside relationships with judges and tribunal members should be the most important criterion for litigation and legal success. Her relationship with Girardi and his cabal are such that she is hostile against any respondent who claims that improper judge and lawyer relationships are valid defenses in state bar disciplinary cases and merit discovery and exposure, because such relationships were the key to Girardi's success as a lawyer, while his relationships with State Bar Trustees, investigators, and prosecutors gave him free reign to steal additional moneys from his clients. Because of Judge Valenzuela's full acceptance of the Girardi principles of litigation, she was violently and strongly prejudiced against Plaintiff, who has already demonstrated the kind of judge/opposing counsel collusion before Judge Miles that Valenzuela was placed on the State Bar Court to validate and protect.

ECF 37 at 18 (citing ECF 1 at 12-13). He asserts that after Judge "Valenzuela recused herself from Girardi's case, Sanai sought to compel her to disclose her relationship with Girardi. He appealed that issue all the way to the California Supreme Court, which is how that Court was notified that Sanai was digging into the Girardi corruption years before the State Bar finally admitted it." *Id.* at 18-19 (citing ECF 1 at 14). According to Mr. Sanai, "the Court must accept as true under a sua pontet [*sic*] pleading motion or as a matter of fact due to Defendants' default completely forecloses the application of *Younger* abstention." ECF 37 at 19.

As set forth in the Court's order, ECF 35 at 4, these allegations are insufficient. "[O]ne who alleges bias 'must overcome a presumption of honesty and integrity in those serving as adjudicators'" with "evidence." *Hirsh*, 67 F.3d at 713-14. Even if the allegations are taken as true, Mr. Sanai has not overcome this presumption.[4] His failure to establish the bias exception to

---

[4] Because Mr. Sanai has not overcome this presumption, the Court need not address Mr. Sanai's further argument that "[w]here the tribunal is disqualified because of actual bias or under the federal standard, *Younger* abstention cannot apply, **even if appellate review is available**[,]" ECF 37 at 18 (emphasis in original).

6

*Younger* stands, notwithstanding Mr. Sanai's related final argument, to which the Court now turns.

Mr. Sanai's last argument is that *Hirsh* was superseded by *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). In that case, the Supreme Court "addresse[d] an extraordinary situation where the Constitution require[d] recusal." *Id.* at 886. There, the chairman and chief executive officer of a company facing a $50 million adverse jury verdict contributed $3 million to replace an incumbent with the judicial candidate that would foreseeably preside over the appeal of that verdict. *Id.* at 884, 886. The contributions "eclipsed the total amount spent by all other . . . supporters and exceeded by 300% the amount spent by [the candidate's] campaign committee." *Id.* at 884. The newly-elected justice denied a motion for recusal and voted with the majority to reverse the verdict. *Id.* at 872. "On these extreme facts," the Supreme Court determined that "the probability of actual bias r[ose] to an unconstitutional level." *Id.* at 886.

Since *Caperton*, the Ninth Circuit has continued to apply the presumption of honesty and integrity in those serving as adjudicators. *See, e.g.*, *United States v. Zitlalpopoca-Hernandez*, 805 F. App'x 494, 497 (9th Cir. 2020) (finding that the defendant did not establish that the "district judge displayed bias or that the circumstances and facts of th[e] case overcame the presumption of honesty and integrity") (citations and quotations omitted). In light of such authority, this Court does not read *Caperton* as eroding that presumption. The Court's application of that presumption is thus consistent with Ninth Circuit law and does not provide basis to grant Mr. Sanai relief under Rule 59(e).

Mr. Sanai's complaints that the discovery procedures in state bar disciplinary proceedings are inadequate to collect evidence to prove bias, ECF 37 at 19-20, and that he need not include evidence in his complaint, *id.* at 21, do not persuade the Court. In his motion for relief, he highlights:

> [O]n June 6, 2003, law360.com published an article concerning the referral of State Bar employees, including the State Bar Court judge who first handled Sanai's case, which sets out the factual predicates for a related due process problem for Justices Kruger, Groban and Jenkins to rule on State Bar proceedings where a person, like Sanai, is demanding comprehensive disclosure by anyone in the State Bar about the connections with Girardi, and discovery against Girardi's bankruptcy estate regarding such matters. B. Lowrey, "Calif. Bar Referred 7 Ex-Employees To Political Watchdog", law360.com,

7

June 6, 2023. As the article explains: The State Bar of California has reported seven former employees to a political watchdog agency for failing to disclose cash or gifts from the scandal-marked Girardi Keese law firm, according to records obtained by Law360. Over the past decade, the bar said, celebrity trial lawyer Tom Girardi treated many of the then-bar officials to opulent parties and luncheons, tickets to shows and sporting events, while a steady stream of clients accused him of misconduct. None of this was reflected in the ex-employees' annual conflict-of-interest filings, according to the bar's letter to the California Fair Political Practices Commission…. Donald Miles, who was a State Bar Court Judge from 2006 to 2018, attended a Consumer Attorneys Association of Los Angeles convention party and Super Bowl party hosted by Girardi Keese, and may have attended a Christmas Eve luncheon in 2013, the bar said. He was also hosted by the firm at a 2013 award dinner and a non-profit luncheon. The referral letter said he did not report Girardi or Girardi Keese as a source of those gifts…. Greenberg declined to comment. Dunn, Nowicki and Miles did not respond to requests for comment this week. Layton and Oehler could not immediately be reached for comment this week. Their former attorney, Bob Baker of Baker Keener & Nahra, suggested that few at the bar complied with annual conflict-of interest filings, known as Form 700s. "How many employees of the State Bar filed a Form 700," Baker wrote in an email to Law360. "I would assume way less than 50%." *Id.; see also* Exh. EEEEE Vol. VII Docket No. 22-3.

Girardi's lavishing of free hospitality on judges and public officials was notorious and invitations were coveted. The fight for tickets to such events was fierce; one former California appellate justice tried to use a ticket as a lure to seduce a young lawyer; when that failed, the justice and his friends took her to Girardi's party and tried to bed her. *See In Re Jeff Johnson*, Cal. Jud. Performance Comm'n, Decision Removing Jeff Johnson (June 2, 2020) at 56-7; C. Sanai Decl. ¶29.

According to the State Bar, a failure to report attendance at a Girardi Super-Bowl party or his legendary Las Vegas dinner and party is an offense under California law that can trigger financial penalties of up to $5,000.00. Vol. VII Docket No. 22-3. That determination imperils dozens if not hundreds of California judges and public officials who attended Girardi's parties and dinners but who failed to file Form 700s. Sanai reviewed the Form 700 disclosures for Justices Groban, Jenkins, and Kruger from September 2016 onwards. C. Sanai Decl. ¶30 Docket No. 32-1. Not a single free dinner (other than ones accompanying speeches, which public officials are allowed to accept) from anyone is disclosed. Either the Justices never accepted invites to legal functions where someone else gave a speech for free or got taken out to dinner by a lawyer, or they did not make any disclosures. The answer of course is that they are invited and attend all the time. The State Bar's position that dinners and paid for travel over $50 is correct as a matter of law, and it is clear that California jurists are not complying with it.

Justices Groban, Jenkins and Kruger bear significant legal and financial risk if Sanai's demands for exculpatory evidence and discovery of information concerning Girardi were found to be

8

> meritorious. That's because the evidence includes judges on the invitation lists that the State Bar has examined in the Halpern May report. Justices Groban, Jenkins and Kruger, and indeed the other justices, have a financial interest in keeping these lists secret, whether or not they ever attended one of the affairs, because of the costs of addressing the question through legal counsel and proving non-attendance at one of Girardi's affairs could equal the fines. There is a constitutionally intolerable risk that jurists such as Groban, Jenkins and Kruger will be biased against any litigant such as Sanai whose legal claims before them include demands for disclosure of detailed information concerning Girardi's corruption of the State Bar and the judiciary, as it put them at risk of investigation and personal payment of legal fees to defend against investigations into judicial carousing at Girardi's expense, plus fines when found to have violated the statute.
>
> There is a second dimension. As pointed out in the State Bar's letter, concealment of information by a public official tolls the limitations period for crimes or civil penalties committed during office. *See* Exh. EEEEE Vol. VII Docket No. 22-3 at 1541. The refusal to reverse Judge Valenzuela's ruling barring Sanai from obtaining information relevant to his accusations of corruption had the effect of concealing any misconduct that they may have committed that otherwise passed the limitations period. *See* Exh 5, Vol. VI Docket No. 21-7 at 1484-5. There is a constitutionally intolerable risk that jurists such as Groban, Jenkins and Kruger will be biased against any litigant such as Sanai whose legal claims before them include demands for disclosure of such information that extends the limitations period for any claims of failure to disclosure reportable information, even the jurists are in fact innocent, if Girardi's invitation lists could include them.

ECF 37 at 22-24. These assertions are far from the "extreme facts" that led the Supreme Court to find a constitutionally intolerable probability of actual bias in *Caperton*. They remain insufficient for a showing of bias that would preclude *Younger* abstention, and as such, they do not present a basis for relief under Rule 59(e).

Mr. Sanai also argues throughout his briefs that the Court denied him due process by dismissing his complaint *sua sponte* without notice and an opportunity to be heard, rendering the Court's judgment void, *see* ECF 37 at 11, and that the Court should have dismissed his claims without prejudice instead of without leave to amend, *see* ECF 37 at 12, 22. The Court agrees with the latter but not the former. The Court will amend its order and corresponding judgment to specify that dismissal is without prejudice pursuant to *Younger*. *See Wasson v. Riverside Cty.*, 234 F. App'x 529, 530 (9th Cir. 2007) (remanding with instructions to dismiss remaining claims without prejudice pursuant to *Younger*). Mr. Sanai's motion to alter or amend judgment is

9

otherwise denied.

### B. Motion for Injunction Pending Appeal

Turning to the motion for injunction pending appeal, Mr. Sanai argues that "[h]e has demonstrated probable and indeed strong success on the merits with ongoing irreparable injury, along with a balance of hardships favoring him and consistency with the public interest[.]" ECF 40 at 8.

As to the first factor, Mr. Sanai reiterates the arguments advanced in his motion to alter or amend judgment. ECF 40 at 9-14 (quoting ECF 37 at 14-21). The Court rejects those arguments for the same reasons set forth above. As relevant in the context of a motion for injunction pending appeal, they do not convince the Court that Mr. Sanai's challenge to the state bar disciplinary proceedings are likely to succeed on the merits. The Ninth Circuit has rejected similar challenges and expressly held that state bar proceedings afford an attorney adequate opportunity to raise federal constitutional claims. *See Hirsh*, 67 F.3d at 713; *Rosenthal*, 910 F.2d at 565. The Court therefore concludes that the first factor does not weigh in favor of granting a injunction pending appeal. The Court also concludes that there is no novel or unsettled issue that would warrant granting such relief in the face of clear precedent. *Compare Am. Beverage Ass'n*, 2016 WL 9184999, at *2 (granting injunction pending appeal where Ninth Circuit had not squarely decided issue in dispute).

As to the second factor, Mr. Sanai argues that he "is suffering irreparable injury each day as he was not granted relief effective by June 30, 2023 which was the finality date for his suspension order." ECF 40 at 15. He asserts that "[t]he State Bar compounded the irreparable harm accelerating the order's practical effect by falsely stating in Sanai's Bar profile that he was *already* ineligible to practice law, months before the June 30, 2023 ordered date, and notifying the Ninth Circuit within hours of the entry of the Supreme Court's orders even before they took effect." *Id.* Mr. Sanai also asserts:

> Constitutional injuries constitute irreparable harm. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (noting that "'an alleged constitutional infringement will often alone constitute irreparable harm'"); *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir.

> 2008), *rev'd on other grounds, Nat'l Aero. & Space Admin. v. Nelson*, 562 U.S. 134, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011) (stating that, "[u]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm"). The Defendants argue that ""a party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature." *Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984)." The "more" consists of monetary injuries that are not "fully compensable in monetary terms." Here the Defendants' immunity from damages constitutes the "more". *Id.* at 520; *Hirsh v. Justices of Supreme Court of California*, 67 F.3d 708, 715 (9th Cir. 1995). While Sanai was unable to articulate the amount of losses when he filed the motion, he now can articulate two lost matters worth at least $55,000 in fees if relief is not granted. Sanai Decl. hereto at ¶31.

ECF 40 at 15-16.

This Court cannot find irreparable harm to Mr. Sanai where binding authority clearly holds that "[t]he State of California provides attorneys subject to discipline with more than constitutionally sufficient procedural due process[.]" *See Rosenthal*, 910 F.2d at 565. Reliance on $55,000 in alleged lost fees or some other unspecified "monetary injuries that are not 'fully compensable in monetary terms,'" is also insufficient to demonstrate irreparable harm. *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ("[P]urely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."). In any event, Mr. Sanai's complaint contains no prayer for damages. *See generally* ECF 1; *see also* ECF 32 at 23 ("The Complaint does not request damages."). The Court therefore concludes that the second factor does not weigh in favor of issuing an injunction pending appeal.

As to the third factor, Mr. Sanai claims that "Defendants suffer[] no hardship from attorney discipline not being imposed on Sanai." ECF 40 at 16. Even if the Court credited this statement, it would be insufficient to shift the balance of equities in Mr. Sanai's favor for the reasons discussed in connection with the remaining factors. The third factor, then, does not weigh in favor of granting an injunction pending appeal.

As to the fourth factor, Mr. Sanai asserts that "it is always in the public interest to prevent the violation of a party's constitutional rights." ECF 40 at 16 (citation and quotations omitted). As set forth above, however, the state bar disciplinary process affords Mr. Sanai an opportunity to

assert the challenges he raises here. Interfering with that process impedes, rather than furthers, the public interest. *Hirsh,* 67 F.3d at 712 ("California's attorney disciplinary proceedings implicate important state interests."); *see also Middlesex Cty.*, 457 U.S. at 434 ("States traditionally have exercised extensive control over the professional conduct of attorney. … The ultimate objective of such control is the protection of the public, the purification of the bar and the prevention of a re-occurrence.") (internal quotations and citations omitted). Accordingly, the Court concludes that Mr. Sanai has not shown that the public interest weighs in favor of granting an injunction pending appeal.

Because Mr. Sanai has not made the requisite showing in connection with the applicable factors, he is not entitled to an injunction pending appeal. *See Sanai v. Cardona*, No. 22-CV-01818-JST, 2023 WL 3899008, at *3 (N.D. Cal. June 8, 2023) ("Sanai has failed to make a sufficient showing to justify the entry of a temporary restraining order or to demonstrate a basis for an order to show cause regarding the issuance of an injunction pending appeal. Sanai's motion is therefore denied.").

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part the motion to alter or amend judgment and denies the motion for injunction pending appeal.

**IT IS SO ORDERED.**

Dated: August 24, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**